J-S22004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JERRY LEE RITCHEY, JR. | |
| Appellant | No. 96 WDA 2014 |

Appeal from the Judgment of Sentence December 10, 2013
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000029-2012

BEFORE:  PANELLA, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 17, 2015**

Appellant, Jerry Lee Ritchey, Jr., appeals from the judgment of sentence entered by the Honorable Oliver J. Lobaugh, Court of Common Pleas of Venango County, after a jury convicted Ritchey on a variety of charges arising from a string of late night commercial burglaries.  We affirm.

After an extensive investigation, including placing a GPS tracker on Ritchey's vehicle, the Commonwealth charged Ritchey with 16 counts of crimes associated with the burglary of 5 buildings, as well as an attempted burglary.  A jury convicted Ritchey on the 13 misdemeanor and felony charges, while the trial court found Ritchey guilty on the remaining 3 charges of summary criminal mischief.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On December 10, 2013, the trial court sentenced Ritchey to an aggregate term of incarceration of 96 to 192 months. This timely appeal followed.

On appeal, Ritchey raises six issues for our review. The first three issues concern the propriety of the trial court's decision to permit the Commonwealth to introduce evidence obtained pursuant to the GPS tracking. After reviewing the briefs of the parties and the certified record, we conclude that the trial court's June 24, 2013 opinion thoroughly and adequately addresses the issues raised by Ritchey.[1] We therefore affirm on

_____

[1] The trial court found that Ritchey's challenge to the jurisdiction of the Allegheny County Court of Common Pleas merited no relief as the argument was based on a subsequent amendment to the Wiretap Act and that under the then-existing language of the Wiretap Act, Allegheny County Court of Common Pleas had jurisdiction. While we agree with the trial court's reasoning, we further note that even under the subsequent amendment, Allegheny County had jurisdiction to approve the wiretap application. Under the amendment, the "court issuing the order must have jurisdiction over the offense under investigation." 18 Pa.C.S.A. § 5761(b).

> Controversies arising out of violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution. *See* 18 Pa.C.S. § 102. Every jurist within that tier of the unified judicial system is competent to hear and decide a matter arising out of the Crimes Code. Pa. Const. Art. 5, § 5 (establishing the jurisdiction of the courts of common pleas within the unified judicial system).

***Commonwealth v. Whanger***, 30 A.3d 1212 (Pa. Super. 2011). Thus, the amendment served to expand jurisdiction to any Common Pleas court, not contract it.

*(Footnote Continued Next Page)*

these issues on the basis of Judge Lobaugh's well-written opinion. **See** Trial Court Opinion, 6/24/13.

Next, Ritchey challenges the sufficiency of the evidence supporting his convictions. After reviewing the briefs of the parties and the certified record, we conclude that the trial court's June 17, 2014 opinion thoroughly and adequately addresses this issue. **See** Trial Court Opinion, 6/17/14, at 5-12. We therefore affirm on this issue on the basis of Judge Lobaugh's well-written opinion.

Next, Ritchey challenges the trial court's decision to allow the introduction of evidence of prior criminal convictions. Specifically, the trial court allowed the Commonwealth to present evidence of Ritchey's burglary

_(Footnote Continued)_ _____

We disagree with the concurring memorandum's suggestion that the foregoing is an "incorrect" summary of the law. Concurring Memorandum, at 1-2. The concurring memorandum (and also 16 West Pa. Prac., Criminal Practice § 11:4) cites an older Superior Court case that repeated a common mistake, since explicitly repudiated by the Supreme Court of Pennsylvania, of confusing jurisdiction with venue.

In **Commonwealth v. Bethea**, 828 A.2d 1066 (Pa. 2003), the Court noted that these terms were often used interchangeably, but reiterated that they were distinct legal categories. **See id**., at 1074-1075. Importantly, the Court stated that "each court of common pleas within this Commonwealth possesses the same subject matter jurisdiction to resolve cases arising under the Pennsylvania Crimes Code, that jurisdiction should only be exercised beyond the territorial boundaries of the judicial district in which it sits in the most limited of circumstances. _Rules of venue_ recognize the propriety of imposing geographic limitations on the exercise of jurisdiction." **Id**., at 1075 (emphasis added). And "venue pertains to the locality most convenient to the proper disposition of a matter." **Id**., at 1074-1075.

convictions in Clearfield County as evidence of a common scheme, design or plan. We note that

> the admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice.

*Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa. Super. 2012) (internal citations omitted).

It is impermissible to present evidence at trial of a defendant's prior bad acts or crimes to establish the defendant's criminal character or proclivities. *See Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa. Super. 2008). Such evidence, however, may be admissible "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Russell*, 938 A.2d 1082, 1092 (Pa. Super. 2007) (citation omitted).

Pennsylvania Rule of Evidence 404(b)(2) provides that "[e]vidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E., Rule 404(b)(2). Rule 404(b)(3), however, mandates that other crimes, wrongs, or acts evidence "may be admitted in a criminal case only upon a showing that the probative

value of the evidence outweighs its potential for prejudice." Pa.R.E., Rule 404(b)(3). **See also Russell**, 938 A.2d at 1092. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially." **Commonwealth v. Wright**, 961 A.2d 119, 151 (Pa. 2008) (citation omitted).

"[T]he function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value and it is not for an appellate court to usurp that function." **Commonwealth v. Parker**, 882 A.2d 488, 492 (Pa. Super. 2005) (citation omitted). The law does not require a court to "sanitize a trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." **Commonwealth v. Page**, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citation omitted).

The trial court found that there were 10 "commonalities" between the crimes for which Ritchey was being tried in Venango County and the crimes committed in Clearfield County. These commonalities included the fact that the victims were commercial businesses which were broken into after business hours; forcible entry using a pry bar; the disabling of security cameras by cutting their electrical wires; the primary goal of the burglaries was cash, not equipment or other products; evidence that the burglar

utilized gloves during the break-ins; a unique shoe print was found at each of the ten burglary sites; and that the defendant had bought shoes with that print prior to the burglaries. *See* Trial Court Opinion, 6/24/13, at 18-19. We cannot conclude that the trial court's reasoning constituted an abuse of discretion, and therefore find that Ritchey's argument merits no relief.

In his final issue on appeal, Ritchey contends that the trial court abused its discretion in imposing sentence. Ritchey concedes that this argument constitutes a challenge to the discretionary aspects of his sentence. *See* Appellant's Brief, at 24.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). When challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence. *See Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005). "Two requirements must be met before we will review this challenge on its merits." *McAfee*, 849 A.2d at 274 (citation omitted). "First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." *Id*. (citation omitted).

"Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code."

*Id*. (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Tirado***, 870 A.2d at 365 (citation omitted). We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. ***See id***. "Our inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *Id*. (citation omitted); ***see also*** Pa.R.A.P. 2119(f).

In the present case, Ritchey's appellate brief contains the requisite Rule 2119(f) concise statement, and, as such, is in technical compliance with the requirements to challenge the discretionary aspects of a sentence. Ritchey argues in his Rule 2119(f) statement that the imposition of consecutive standard range sentences, as opposed to concurrent sentences, by the trial court was excessive, and that the trial court failed to consider the impact of his sentence on his children and ill parents. Ritchey further argues that the trial court failed to consider his remorsefulness.

"[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (internal citations omitted). The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly

harsh, considering the nature of the crimes and the length of imprisonment. *See id*., at 171-172 (Pa. Super. 2010). Given the pre-meditated nature of Ritchey's burglary spree, we conclude that the sentences at issue do not fall into the category of extreme circumstances, and therefore, Ritchey has not raised a substantial question.

As we conclude that none of Ritchey's issues on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Judge Strassburger files a concurring memorandum.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/17/2015

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY,
PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA, : CRIMINAL DIVISION
:
: No. 29-2012
:
v. :
:
JERRY LEE RITCHEY, JR., :
Defendant. :

## OPINION OF COURT

AND NOW, June 24, 2013, the Court has for consideration the Motion in Limine regarding the admission of evidence obtained through a GPS tracker filed by the Defendant, Jerry Lee Ritchey, Jr. A hearing was held on the Motion on March 18, 2013 at which time Defendant was present and represented by counsel Benjamin Levine, Esq. and the Commonwealth was represented by District Attorney Marie Veon. The attorneys were given until March 21, 2013 to file a written memo on the motion and the Court heard argument on March 21, 2013. Defense Counsel filed his Memorandum of Law in Support of Issues Raised in Limine Motion on March 21, 2013. The Commonwealth filed its Memorandum in Opposition to the Defendant's Motion to Suppress or Limit Evidence on May 7, 2013. After careful consideration of the Motion, the arguments of counsel, testimony, and the Memoranda filed by the attorneys, the Motion will be denied.

The Criminal Complaint with attached Affidavit of Probable Cause was filed with Magisterial District Judge Douglas Dinberg on November 23, 2011 alleging that sufficient probable cause existed to believe that the defendant had committed Burglary under 18 Pa. C.S.A. §3502 (a), Theft by Unlawful Taking or Disposition under 18 Pa. C.S.A. § 3921 (a), Criminal Mischief under 18 Pa. C.S.A. § 3304 (a) (5), and Criminal Attempt to Commit Burglary under 18 Pa. C.S.A. 901 (a). Defendant had his preliminary

1

arraignment on December 1, 2011. His preliminary hearing was continued once at the request of the prosecution, once at the request of the defense attorney and was ultimately waived by the Defendant on January 11, 2012. On March 30, 2012, an Information was filed alleging five counts of Burglary, second degree felonies under 18 Pa. C.S.A. §3502 (a); five counts of Theft by Unlawful Taking, misdemeanors of the first degree under 18 Pa. C.S.A. § 3921 (a); five counts of Criminal Mischief, summary offenses under 18 Pa. C.S.A. § 3304 (a)(5); and one count of Criminal Attempt to Commit Burglary, a second degree felony under 18 Pa. C.S.A. § 901 and 18 Pa. C.S.A. § 3502 (a).

On September 27, 2012 the Honorable H. William White granted the Motion to Withdraw filed by J.D. Ryan, Esq., Defendant's original counsel. On October 16, 2012 Attorney Jeri Bolton entered her appearance on behalf of the Defendant for the Public Defender's Office. On October 26, 2012 this Court granted a Motion for a Continuance of the trial filed by Defense Counsel due to the voluminous amount of discovery received from the Commonwealth. On December 19, 2012 this Court granted another Continuance of Jury Selection as the Defendant's attorney was leaving her position at the Public Defender's Office and his new counsel would need sufficient time to review the file and meet with the Defendant to discuss his case. Attorney Benjamin Levine entered his appearance on behalf of the Defendant on February 11, 2013. A jury was selected on March 4, 2013 for a three day trial which was scheduled for March 18, 19, and 21, 2013 in Courtroom I of the Venango County Courthouse. On the eve of trial, March 15, 2013, Defense Counsel filed the instant Motion in Limine and orally sought a continuance of the trial. The continuance was granted.

In his Motion in Limine, the Defendant seeks the preclusion at trial of the results of the Global Positioning System device, hereinafter referred to as "GPS," as well as any additional evidence procured through search warrants later executed and based in part upon the analysis of the GPS evidence. Defendant's argument for suppression of the evidence is that the evidence obtained using the GPS is inadmissible based on the recent Supreme Court decision of *U.S. v. Jones*, 132 S. Ct. 945 (2012) and the subsequent Pennsylvania Superior Court decision of *Com. v. Burgos*, 64 A.3d 641 (Pa. Super. 2013). Defendant further argues that, if the evidence obtained through the GPS is deemed admissible, the evidence should still be suppressed as its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Finally, the Defendant argues that the Commonwealth should not be able to use the *modus operandi*, identity exception to PA Rule of Evidence 404 (b) in order to present evidence of other similar crimes, wrongs or acts at trial.

According to the Affidavit of Specific Articulable Facts for Installing Electronic Tracker the facts alleged to link the defendant to the burglaries are as follows. Between December 23, 2010 and July 1, 2011 there was a string of twenty-nine nighttime commercial burglaries in Venango County, PA. Each business was entered by force and any security systems were disabled primarily by cutting or damaging phone line connections. The burglar primarily removed cash from the premises and the combined losses totaled over $23,000.00. Due to the defendant's presence at two commercial burglary locations shortly before the burglaries occurred and his prior criminal history of theft convictions, the defendant Jerry Lee Ritchey, Jr. was developed as a suspect. Clarion County Pennsylvania State Police had also identified the defendant as a suspect

3

in a commercial burglary occurring in Clarion County in January of 2011 based upon tire track imprints of Dunlop SP 60 tires recovered at the scene. On June 12, 2011 Clarion PSP observed a 1998 Toyota Camry bearing PA REG HGK-8230, registered to Jerry Ritchey Jr., with Dunlop SP 60 tires. Clarion PSP made contact with the defendant about the tires on his Toyota Camry on June 15, 2011 in the parking lot of Sheetz in Clarion, Pennsylvania. After speaking with the police, the defendant Ritchey replaced the tires on his Toyota Camry.

According to the Affidavit in question, the Pennsylvania State Police began visual surveillance of the defendant during the nighttime hours. Ritchey was observed at an Oil City residence and a Strattanville residence. He was observed operating the Toyota Camry and the 2010 Mazda sedan, Vehicle Identification Number JM1BL1SG1A1225734 on which the GPS tracker was eventually installed. The Mazda was owned by Ritchey's employer Daniel Luton of Luton Plumbing and Heating. While he was under visual surveillance on July 1, 2011, the Defendant left his Oil City residence in the Mazda at 1:00 a.m. Shortly thereafter visual surveillance ended to avoid detection. Subsequently, between 2:20 a.m. and 2:25 a.m., the security system was disabled at 84 Lumber on Route 257 in Cranberry Township, Venango County, forced entry was made, and $600.00 in U.S. currency was taken out of the office. At 3:10 a.m. an electric plate reader providing surveillance of Route 257 recorded the Mazda plate HSD4223 traveling northbound away from 84 Lumber and towards the defendant's Oil City residence. Hours before the burglary, the defendant visited 84 Lumber and was admitted to the office for about a half an hour. Additional information from 84 Lumber

4

includes a cell phone number of 814-516-3015 provided to them as a contact number by Jerry Ritchey.

Based on these facts alleged in the affidavit, a GPS tracking device was placed underneath the Mazda by a Court Order pursuant to 18 Pa. C.S.A. §5761 obtained from the Allegheny County Court of Common Pleas on July 9, 2011. The tracker placed the Mazda in the vicinity of four commercial burglaries that occurred on the night of July 20, 2011-July 21, 2011, namely, The Apex Hydraulic and Machine Company, and D.C. Enterprises both located along the Philipsburg/Bigler Highway in Decatur Township, Clearfield County, the T.L. Bainey Trucking Company located along the Philipsburg/Bigler Highway in Bradford Township, and the Bradford Township Municipal Building, Clearfield County. The defendant was seen by video surveillance at the Brookville Sheetz prior to the time the burglaries were committed and was seen exiting the Mazda when he returned to his home by a member of the surveillance team. After his arrest, subsequent search warrants were executed for Defendant's Oil City Residence and Strattanville Residence and additional evidence was obtained from those locations.

I.    GPS Tracking Device

To prevail on a motion to suppress evidence, the defendant "has the preliminary burden of establishing standing and a legitimate expectation of privacy." *Com. v. Burton*, 973 A.2d 428, 435 (Pa. Super. 2009)(*en banc*). When the object searched is a vehicle, the defendant must provide proof of ownership or a strong showing of a possessory interest in the vehicle. At the hearing the District Attorney conceded that Defendant had established standing and a legitimate expectation of privacy in the Mazda vehicle with a

5

vehicle identification number of JMBLISGIA1225734 and a Pennsylvania Registration Number of HSD-4223 owned by defendant's employer Luton Plumbing and Heating. Defendant had a possessory interest in the Mazda as he was making monthly payments to his employer in order to purchase the Mazda. Once the defendant has established standing, the burden shifts to the Commonwealth "to establish by a preponderance of the evidence that the challenged evidence is admissible." *Com. v. Powell*, 994 A.2d 1096, 1101 (Pa. Super. 2010)(citations omitted).

In 2012, after the wiretap warrant had been obtained in this case, the United States Supreme Court ruled in *United States v. Jones*, that the placement of a GPS device on a suspect's car constitutes a search. 132 S.Ct. 945, 949 (2012). Evidence obtained from a warrantless use of a GPS device on the suspect's car was held to violate the Fourth Amendment. See *Id.* at 949. The ramifications of this ruling have been discussed in two Pennsylvania Superior Court decisions, *Com. v. Arthur*, 62 A.3d 424 (Pa. Super. 2013) and *Com. v. Burgos*, 64 A.3d 641 (Pa. Super. 2013).

The Superior Court in *Burgos* addressed the matter of whether installation and subsequent monitoring of the GPS on Burgo's truck was *per se* unreasonable where the police obtained a statutorily prescribed wiretap order, approved by judicial authority, pursuant to Section 5761 as an issue of first impression at the appellate level in Pennsylvania. 642 A.3d at 648. The Court in *Burgos* noted that the *Jones* Court, "did not address whether the government must obtain a warrant to install and use a GPS tracking device, and if not, what level of suspicion is required, reasonable suspicion or probable cause." *Id.* at 649. The *Burgos* Court concluded that in order for the police to attach and monitor a GPS tracking device to an individual vehicle in Pennsylvania, the police must

6

have probable cause. *Id.* at 652. In *Burgos*, law enforcement officers did obtain a court-authorized order pursuant to Section 5761 prior to attaching the GPS device on Burgos' vehicle, and the Superior Court held that this was a valid warrant supported by probable cause. *Id.* at 656.

In the case at hand, the law enforcement officers also obtained a court-authorized order, pursuant to the then existing version of Section 5761, prior to attaching the GPS device on defendant's vehicle.

The version of 18 Pa. C.S.A. §5761 in effect at the time of the issuance of the Order to install and use a mobile tracking device on the defendant's car stated:

§5761. Mobile tracking devices. [Effective until December 24, 2012]
(a) *Authority to issue.*-Orders for the installation and use of mobile tracking devices may be issued by a court of common pleas.
(b) *Jurisdiction.* - Orders permitted by this section may authorize the use of mobile tracking devices within the jurisdiction of the court of common pleas, and outside that jurisdiction, if the device is installed within the jurisdiction of the court of common pleas.
(c) *Standard for issuance of order.* - An order authorizing the use of one or more mobile tracking devices may be issued to an investigative or law enforcement officer by the court of common pleas upon written application. Each application shall be by written affidavit, signed and sworn to or affirmed before the court of common pleas:
    1. state the name and department, agency or address of the affiant;
    2. identify the vehicles, containers or items to which, in which or on which the mobile tracking device shall be attached or be placed, and the names of the owners or possessors of the vehicles, containers or items;
    3. state the jurisdictional area in which the vehicles, containers or items are expected to be found; and
    4. provide a statement setting forth all facts and circumstances which provide the applicant with a reasonable suspicion that criminal activity has been, is or will be in progress and that the use of a mobile tracking device will yield information relevant to the investigation of the criminal activity.
(d) *Notice.* – The court of common pleas shall be notified in writing within 72 hours of the time the mobile tracking device has been activated in place on or within the vehicles, containers or items.

7

(e) *Term of authorization.* – Authorization by the court of common pleas for the use of the mobile tracking device may continue for a period of 90 days from the placement of the device. An extension for an additional 90 days may be granted upon good cause shown.

(f) *Removal of device.* – Wherever practicable, the mobile tracking device shall be removed after the authorization period expires. If removal is not practicable, monitoring of the mobile tracking device shall cease at the expiration of the authorization order.

(g) *Movement of device.* – Movement of the tracking device within an area protected by a reasonable expectation of privacy shall not be monitored absent exigent circumstances or an order supported by probable cause that criminal activity has been, is or will be in progress in the protected area and that the use of a mobile tracking device in the protected area will yield information relevant to the investigation of the criminal activity.

The Wiretap Act's constitutionality has been challenged and determined not to violate an individual's right of privacy. *Com. v. Doty*, 498 A.2d 870, 876 (Pa. Super. 1985). The Court in *Burgos*, concluded that the wiretap orders, "serve as the functional equivalent of traditional search warrants…these orders are statutorily prescribed orders, approved and issued by the judiciary, which allow an investigating officer to conduct a search *via* interception of an individual and his or her property and effects, upon a showing of the requisite level of suspicion." *Burgos*, 64 A.3d 641 at 655.

Here, the law enforcement officer obtained a court-authorized order, pursuant to Section 5761, for attaching the GPS device to defendant's vehicle on July 8, 2011. The Order of Court used the language, "that there is *reasonable suspicion* to believe that criminal activity has been, is or will be in progress and the use of a mobile tracking device attached to or placed on a vehicle identified as a 2010 Mazda 323 sedan, PA registration HSD-4223, VIN # JM1BL1SG1A1235734 will yield information relevant to the investigation of the criminal activity." Order Authorizing the Installation and Use of a Mobile Tracking Device (C.P. Allegheny Cty July 8, 2011). Thus, in order for the GPS

placement to be valid in light of *U.S. v. Jones* and *Com. v. Burgos*, the Court must determine whether the wiretap order was supported by probable cause under §5761. The standard relied upon by the *Burgos* court was the following: "the standard for determining whether probable cause existed for an order authorizing interception of telephone communications is the same as that used to determine probable cause for search warrants." *Com. v. Birdseye*, 637 A.2d 1036, 1041 (Pa. Super. 1994), *aff'd*, 670 A.2d 1124 (Pa. 1996). As laid out by the Court in *Burgos*,

> The question of whether probable cause exists for a wiretap must be adjudged by the totality of the circumstances. Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court ... the task of [the trial court] is simply to make a practical, common-sense decision, whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Thus the totality of the circumstances test permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip[.]" *Com. v. Torres*, 764 A.2d 532, 537-38 (Pa. 2001). "An affidavit of probable cause to support a search warrant does not require a prima facie showing of criminal activity on the part of the occupants of the premises to be searched." *Com. v. Gutierrez*, 969 A.2d 582, 588 (Pa. Super. 2009) (quotation and quotation marks omitted), appeal denied, 983 A.2d 726 (Pa. 2009). Moreover, "[a]reviewing court may not conduct a de novo review of the issuing authority's probable cause determination. The role of both the reviewing court and the appellate court is confined to determining whether there is substantial evidence in the record supporting the decision to issue the warrant." *Com. v. Wallace*, 953 A.2d 1258, 1262 (Pa. Super. 2008) (quotation and quotation marks omitted), *reversed on other grounds*, 42 A.3d 1040 (Pa. 2012). "We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause." *Com. v. Rogers*, 615 A.2d 55, 62 (Pa. Super. 1992).

64 A.3d at 655-56. Thus, we examine the information provided within the four corners of the Affidavit of Specific Articulable Facts for installing electronic tracker to determine if there was probable cause to support the officer's request for a wiretap order. *See Com. v. Stamps*, 427 A.2d 141, 143 (Pa. 1981); PA. R. Crim. P. Rule 203 (B)("The issuing

9

authority, in determining whether probable cause has been established, may not consider any evidence outside of the affidavits.").

Under the totality of the circumstances test, the Court is satisfied that the information provided in the Affidavit of Specific Articulable Facts for Installing Electronic Tracker rises not only to the level of reasonable suspicion but also to the necessary level of probable cause. "Probable cause is not certitude, nor even preponderance; rather, it is merely a sufficiently substantive probability to justify the intrusion involved." *Com. v. Doria*, 574 A.2d 653, 657 (Pa. Super. 1990) *(concurrence)*; *Com. v. Glass*, 754 A.2d 655, 664 (Pa. 2000); *See also Illinois v. Gates*, 462 U.S. 213, 231-32 (U.S. 1983)(Probable cause is a "practical, nontechnical conception." It is "a fluid concept-turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.").

Here, the officer was able to place the defendant at the scene of two of the burglaries shortly before they occurred through independent eyewitness information obtained from employees at the different businesses, Hard's Welding and Young's Tires. There was no indication that the veracity or basis of knowledge of the employees was suspect. *See Com. v. Birdseye*, 637 A.2d 1036, 1042 (Pa. Super. Ct. 1994). After being developed as a suspect based on his presence at Hard's Welding and Young's Tires, information corroborating the suspicion was gathered in a number of ways, including police visual surveillance. *See Com. v. Burgos*, 64 A.3d at 656. All of the burglaries occurred at commercial locations, during the nighttime, the buildings were entered by force and "any security systems were disabled, primarily by cutting or damaging phone line connections. Cash was taken in various amounts." Affidavit of Specific Articulable

10

Facts for Installing Electronic Tracker, 1. Investigation revealed that the tire track evidence recovered at a Clarion County burglary scene matched the Dunlap SP 60 tires that Defendant had on his 1998 Toyota Camry. *See Com. v. Mangini.* 386 A.2d 482, 485, 487 (Pa. 1978)(That "[t]ire imprints left at the scene are similar to imprints of the tires of the Chevrolet 2-door Sedan registered in the name of Betty R. Mangini, Tag No. 07044T" was one of the main specific articulable facts of the case supporting probable cause for a search warrant.) The defendant was then contacted by the Clarion Pennsylvania State Police at a Sheetz gas station and the Dunlap SP 60 tires were discussed. After the conversation with the Clarion Police, the Defendant replaced the tires on his Toyota Camry. Defendant had two residences in proximity to the locations of the burglaries, 48 West Fourth Street, Oil City, Venango County, Pennsylvania and a Strattenville residence in Clarion County, Pennsylvania.

Physical visual surveillance of Jerry Ritchey's nighttime activities began on June 27, 2011 by Troopers from BCI and Troop E Vice and the surveillance revealed that the Mazda was in an area near a burglary around the time the burglary was committed, which led to the belief that the Mazda was being used to transport the defendant to and from the burglaries. *Com. v. Doty,* 498 A.2d 870, 883 (Pa. Super. 1985). During surveillance the police discovered that while Ritchey's girlfriend sometimes drove the Toyota Camry, Ritchey was the only person who was observed driving the Mazda. Specifically, on July 1, 2011 a white male was spotted leaving the Oil City residence in the Mazda and visual surveillance pursued. In order to avoid being spotted by the driver, the police officers had to discontinue pursuit a few minutes later. That night a burglary occurred at 84 Lumber on Route 257. At 84 Lumber the phone lines were cut and the security system was

11

disabled between 2:30 A.M. and 2:53 A.M. An image of the Mazda was captured by electronic police surveillance of vehicles traveling on Route 257 at 3:10 A.M. on June 1, 2011, traveling away from 84 Lumber and towards Oil City. Additionally, an interview with an 84 Lumber employee revealed that on June 30, 2011, within hours of the burglary, Jerry Ritchey entered 84 Lumber around noon and stayed in the office area approximately a half hour before leaving. Ritchey provided 84 Lumber with a cell phone number to contact him. *See, Com. v. Webster*, 435 A.2d 1217, 1220 (Pa. Super. 1981)(defendant's proximity in both time and place to the site of the burglary contribute to a finding of probable cause).

These burglaries occurred on a regular basis over a period of many months from December of 2010 through the time a Wiretap Act warrant was issued to permit the attachment of the GPS to defendant's car. Thus, the information cannot be seen as being stale. *Com. v. Burgos*, 64 A.3d at 656. The collected information was analyzed by law enforcement, including Pennsylvania State Police Corporal John T. Tobin who has had 21.5 years experience in the investigation of crimes and seizure of evidence within Pennsylvania and who was familiar with the methods used by burglars to commit the crimes and to conceal their activities from detection by law enforcement authorities. *Id.* at 656. Thus, based on a totality of the circumstances, there was probable cause to believe that defendant had resumed his former trade as a local thief and for supporting the Officer's request for a wiretap order. *Com. v. Doria*, 574 A.2d at 658.

As probable cause existed for the wiretap order when it was issued the GPS placement on Defendant's Mazda was not an unreasonable search and seizure under the Fourth Amendment and the evidence collected by the GPS tracker will not be suppressed

as the Commonwealth has met its burden of establishing by a preponderance of the evidence that the challenged evidence is admissible.

Defendant also argues that the change in the jurisdictional portion of the Wiretap Act §5761 (b) would make the issuance of a warrant by and through Allegheny County inadmissible for trials in this County. The jurisdictional change removes a Court of Common Pleas' authority to issue an order for the installation and use of mobile tracking device unless that County has jurisdiction over the offense under investigation. There is no indication that this change was prompted by the ruling in *U.S. v. Jones*, 132 S.Ct. 945 (U.S. 2012). At the time of the issuance of the warrant, Allegheny County had jurisdiction to enter the Order of Court. A trial court is to apply current statutory law until the Legislature repeals or amends it. *Com. v. Thomas*, 51 A.3d 255, 260 (Pa. Super. 2012), *app'l denied* 63 A.3d 1247 (Pa. 2013). Additionally, "[a]bsent clear and manifest intent, legislation is presumed not to be retroactive." *Id.; See* 1 Pa. C.S.A. §1926. Thus, we decline to indulge in speculation about what would have transpired if the legislature had passed and ratified the jurisdictional change in §5671(b) of the Wiretap Act before the warrant was obtained.

In light of this finding, we need not reach the Commonwealth's argument that this Court is faced with conflicting opinions from *Commonwealth v. Arthur*, 62 A.3d 424, 432 (Pa. Super. 2013) and *Commonwealth v. Burgos*, 64 A.3d 641 (2013) issued the same day by the Pennsylvania Superior Court. In *Arthur*, the Pennsylvania Superior Court held that, "We have carefully reviewed *Jones*, and see nothing in it that would support the notion that, as in the instant matter of a GPS device placed onto a vehicle in full compliance with Section 5761 of the Wiretap Act offends either the Fourth

13

Amendment or Article 1, Section 8 of the Pennsylvania Constitution." In *Burgos*, the Superior Court held that as a result of the decision in *Jones* the Court of Common Pleas must have probable cause to issue an Order installing an electronic tracking device onto a car. We need not resolve these conflicting opinions at this time as we hold that the affidavit in support of the wiretap warrant rose to the level of probable cause satisfying both *Arthur* and *Burgos*. We also need not address the Commonwealth's argument that the good faith exception to the exclusionary rule applies to the present matter. Also in light of the above finding, we need not address Defendant's argument that subsequent search warrants of Mr. Ritchey's residences are invalid as fruits of the poisonous tree. As we have held that the GPS wiretap warrant was supported by probable cause, the information gathered by the use of the GPS technology on Mr. Ritchey's vehicle was properly included in the affidavits of specific articulable facts for the subsequently executed search warrants for Mr. Ritchey's vehicles and residences and those warrants remain valid.

II. Unfair Prejudice

Defendant further argues that the evidence collected by the GPS should be deemed inadmissible as its admission would cause the defendant undue prejudice. Defendant relies on Pennsylvania Rule of Evidence 403 which states "the court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Defendant does not argue that the evidence collected by the GPS is not relevant; he argues only that its prejudicial value outweighs its probative value.

14

Merely because evidence is unfavorable to a party does not render it more prejudicial than probative. *Hutchison v. Luddy*, 763 A.2d 826, 847 (Pa. Super. 2000). Evidence is deemed to be prejudicial not because it hurts a party's case, but because it has an undue tendency to suggest that a decision was made on an improper basis. *Leahy v. McClain*, 732 A.2d 619, 624 (Pa. Super. 1999). "Unfair prejudice" also refers to a tendency to divert the jury's attention away from its duty of weighing the evidence impartially. *Com. v. Wright*, 961 A.2d 119, 151 (Pa. 2008).

Defendant argues that to allow information collected by GPS into evidence when the warrant for the GPS was executed by a court nearly 100 miles away with no stake in these outcomes would tremendously prejudice Mr. Ritchey at trial. However, the information in the Affidavit of Specific Articulable Facts used to obtain the GPS warrant came almost exclusively from Venango County. The Defendant has failed to explain how having a warrant validly issued by the Allegheny County Court of Common Pleas would confuse or mislead the jury. The warrant was issued in Allegheny County because Defendant had parked his car at the Pittsburgh International Airport while he was on his honeymoon. It is hard to conceive how that information could prejudice the jury against Mr. Ritchey.

There is a possible risk of prejudice to Defendant from the introduction of evidence of other crimes collected by the GPS but not charged in the Venango County Information. To counter that risk, the Court can give a cautionary instruction to the jury instructing the jury not to consider the evidence that Defendant has committed similar crimes outside of Venango County as establishing any element of any of the crimes charged in this case.

15

### III. Modus Operandi, Identity-Use of Evidence by the Commonwealth

In general, evidence of distinct crimes is not admissible against a defendant being prosecuted for another crime to show bad character or his propensity for committing criminal acts. Pa. R.E. 404 (b)(3). The defendant is entitled to the presumption of innocence and the Commonwealth may not strip him of that presumption by proving that he has committed other criminal acts. Instead the Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused. *See Com. v. Stanley*, 398 A.2d 631, 633 (Pa. 1979); *Com. v. Constant*, 925 A.2d 810, 821 (Pa. Super. 2007), *app'l denied*, 932 A.2d 1285 (Pa. 2007). Evidence of other crimes, wrongs, or acts is admissible only upon a showing that the probative value of such evidence outweighs the possibility of unfair prejudice to the Defendant. Pa.R.E. 404(b)(3).

> In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficiency of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

McCormick on Evidence, §190 p. 811 (4th. Ed. 1992). Pennsylvania Rule of Evidence 404 (b)(2) permits evidence of prior bad acts to be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. *Com. v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010).

16

It is crucial to note that the Rules of Evidence only aim to exclude evidence which results in prejudice which is unfair; all evidence is prejudicial to some degree—this is its function, to sway the minds of the jury. *See, Com. v. Peer*, 684 A.2d 1077, 1083 (Pa. 1996) ("the test for admissibility is whether the challenged evidence is so *unfairly* prejudicial that its inflammatory nature makes its probative value de minimis" [emphasis in original]). The prohibition against the introduction of evidence regarding prior acts contemplates that the acts are distinct in time and place from the crimes charged. *Com. v. Potts*, 566 A.2d 287, 294 (Pa. 1989). Prior acts evidence may be admissible when the acts are necessary to detail the overall sequence of events leading up to the crime charged. *Com. v. Wharton*, 607 A.2d 710, 720 (Pa. 1992).

The Pennsylvania Supreme Court has determined that, when used to prove identity, evidence of prior crimes may be admissible

> to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here *much more is demanded than the mere repeated commission of crimes of the same class*, such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature.*

*Com. v. Ross*, 57 A.3d 85, 102 (Pa. Super. 2012) *quoting Com. v. Shively*, 424 A.2d 1257 (Pa. 1981)(emphasis in original). To preserve the purpose of Rule 404 (b)(1), there must be "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question." *Com. v. Ross*, 57 A.3d at 104. This requires "such a high correlation in the details of the crimes that proof that a person committed one of them makes it very unlikely that anyone else committed the others," *Com. v. Weakley*, 972 A.2d 1182, 1189 (Pa. Super. 2009) *(quoting Com. v. Novasak*, 606 A.2d 477, 484 n. 7 (Pa. Super. 1992)), *appeal denied*, 986 A.2d 150 (Pa. 2009).

17

Evidence from subsequent other crimes may be admitted to show identity "thorough selection of a particular class of victim and use of idiosyncratic methods to carry out the crimes." *Com. v. Weakley*, 972 A.2d 1182, 1188 (Pa. Super. 2009), *appeal denied* 986 A.2d 150 (Pa. 2009). In comparing the separate crimes, a court must examine the similarities between a number a factors, including: "(1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims. Remoteness in time between the crimes is also factored, although its probative value has been held inversely proportional to the degree of similarity between crimes." *Com. v. Weakley*, 972 A.2d at 1189.

In the present case, we conclude that the evidence in question is admissible under the common scheme, design, or plan exception and to establish identity. Here, the introduction of the evidence that Defendant has committed similar burglaries on July 21, 2011 has significant importance to the narrative integrity of the Commonwealth's case in establishing identity and showing the continuity of the presence of a distinct four arrow pattern on the soles of water shoes owned by the defendant at the burglarized businesses. The Defendant was convicted of four commercial burglaries in Clearfield County committed on July 21, 2011. The theme of the prosecution is that the four burglaries of which the Defendant has been convicted are so similar to the six burglaries in the case at hand as to permit the conclusion that they were committed by the same perpetrator as part of a common scheme or plan. Commonalities between the crimes are:

(1) the victims were all commercial businesses which were entered afterhours during the nighttime;

(2) entry was gained by force and pry bar marks were noted on all the doors;

18

(3) any security systems were disabled by cutting the electrical wires;

(4) The offices of the businesses were targeted and desk drawers and filing cabinets were rifled through; drawers were left open and papers were scattered;

(5) The burglar was primarily concerned with only stealing cash; and equipment or business product was not taken;

(6) The burglar left evidence that he was wearing gloves;

(7) The Defendant's Mazda was seen in the vicinity of seven of the burglaries around the time that the businesses were burglarized;

(8) Geographically, all ten of the burglaries were within driving distance of the Defendant's two residences;

(9) A unique water shoe track with a four arrow design was found at each of the ten burglary sites;

(10)     The defendant bought a pair of the water shoes with the four arrow sole pattern on May 21, 2011 that matches the shoe tracks left at the scene of all the burglaries which occurred after May 21, 2011.

Through video surveillance and receipts, PSP Trooper Clark was able to determine that the Defendant had purchased water shoes with the particular four arrow design on the soles that matched the tracks left at the four burglaries from the Clarion Walmart on May 21, 2011 and July 17, 2011. A mere two days later the four arrow patterned tracks were found at the scene of each of the three commercial burglaries committed on May 23-24, 2011 and were also found at the scenes of the subsequent burglaries defendant is charged with. It is unique and atypical to find water shoe tracks at these particular commercial

19

businesses. Heavy machinery and equipment on the premises of these businesses[1] make steel-toed shoes a much safer option than water shoes intended for swimming, kayaking, or other water sports. Thus the presence of the water shoes at each of the burglarized businesses is a striking parallel between the crimes. *See Com v. Aikens*, 990 A.2d 1181, 1186 (Pa. Super. 2010). These water shoes are asserted to be a part of this course of conduct, a means which Defendant used to accomplish the burglaries. Additionally, Defendant's Mazda was tracked in the vicinity of all four of the Clearfield County burglaries and was seen in the vicinity of 84 Lumber around the time of the burglaries. A "review of Rule 404(b) (1) and relevant jurisprudence shows the other crime need not match every fact and circumstance of the charged crime before it may be used to prove identity." *Com. v. Weakley*, 972 A.2d at 1190. Considering all of the similarities between the details of the burglaries leads to the belief that "proof that a person committed one of them makes it very unlikely that anyone else committed the others." *Com. v. Ross*, 57 A.3d 85, 102 (Pa. Super. 2012).

As for remoteness in time, it is noted that the earliest of the six burglaries in this case occurred within two months, a fairly short time span, of the burglaries that Defendant was convicted for in Clearfield County. *See e.g., Com. v. Bronshtein*, 691 A.2d 907, 916 (Pa. 1997), *cert. den.* 522 U.S. 936 (1997)(five weeks since another similar robbery-murder); *Com. v. Hacker*, 959 A.2d 380, 393 (Pa. Super. 2008), *appeal granted* 975 A.2d 1082 (Pa. 2009), *order reversed on separate grounds*, (Pa. 2009)("Both incidents occurred during the same summer, separated by at most two months"); *Com. v. Clayton*, 483 A.2d 1345, 1349-50 (Pa. 1984)(attempted murder

---

[1] The businesses are: Whalen Construction, Inc., Hards Welding, Thomas Auto, Bert Klapec, Inc., R&R Garage, 84 Lumber, Bradford Township Municipal Building, Apex Hydraulic Machine, D.C. Enterprises, and TL. Bainey Trucking.

20

properly admitted at trial for murder committed three months earlier where crimes were strikingly similar in geographic location, motivation to rob drug-dealing victims, and method of executing crime); *Com. v. Hughes*, 555 A.2d 1264 (Pa. 1989)(ten months) The importance of the gap in time is inversely proportional to the similarity between the crimes. *Com. v. Aikens*, 990 A.2d 1181, 1187 (Pa. 2010). Here, we have similar crimes occurring in fairly quick succession.

Based on the foregoing discussion, we find that the aforesaid four convictions had relevance to permissible purposes with respect to the six burglaries in this case. However, this is only the first step in the analysis because such relevant evidence is ultimately only admissible under Pennsylvania Rule of Evidence 404(b) if its probative value outweighs its potential for prejudice. Here, such is the case. First, the probative value of the evidence is substantial. Similarities between the crime scenes relate not just to one, but to several important questions such as plan, preparation, common scheme or design, and identity. Moreover, it appears the evidence is not just minimally relevant but, rather, serves as fairly direct, logical and elucidating evidence tying Defendant to all ten burglaries. There is a need for the other crimes evidence because as in *Com. v. Weakley*, "the evidence upon which the prosecution is based is largely circumstantial, and it is the specific purpose of the 'other crimes' evidence to give the jury insight into the significance of these circumstances." 972 A.2d at 1191.

Second, there is a potential for prejudice to the Defendant as the crimes are so similar that a jury might be tempted to decide that because he was convicted of the burglaries in Clearfield County he is automatically guilty of the burglaries in Venango County. However, as was stated above, "evidence will not be prohibited merely because

21

it is harmful to the defendant." *Hutchison v. Luddy*, 763 A.2d at 847. Pennsylvania Courts have consistently "upheld the admission of other crimes evidence, when relevant, even when the details of the other crimes were extremely grotesque and highly prejudicial." *Com. v. Dillon*, 925 A.2d 131, 141 (Pa. 2007). It is also worth noting that in the context of the crimes charged, the four burglaries, while reprehensible, are unlikely to be viewed by the jury as so heinous as to completely overwhelm their ability to weigh the evidence directly. Instead, as in *Com. v. Weakley*, the focal point of the evidence is the precise criminal method used, as opposed to inflaming the jury's emotions of sympathy or hostility. 972 A.2d at 1191. The convictions do not tend to show Defendant as a "bad person" in any way other than with respect to the specific conduct at issue. *Com. v. Hacker*, 959 A.2d at 393. "Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence." *Com. v. Dillon*, 925 A.2d at 141 *relying on* Comment Pa. R.E. 404(b). The Court intends to issue a cautionary instruction to the jury in this case.

As the probative value of the relevant convictions for burglary from Clearfield County outweighs its potential for prejudice, the evidence of the convictions is admissible in this case under Pennsylvania Rule of Evidence 404(b). Thus, the Commonwealth shall be permitted to introduce evidence of the similarities of the facts regarding the defendant's conviction for the four burglaries committed in Clearfield County on July 21, 2011 for the purpose of showing common scheme and plan as well as identity.

22

For the above reasons, it is hereby ORDERED and DECREED that the Defendant's Motion in Limine is DENIED.

BY THE COURT,

OLIVER J. LOBAUGH, President Judge

Marie Veon, DA
Benjamin Levine, PD

23

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY,
PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,        : CRIMINAL DIVISION
                                     :
                                     : No. 29-2012
         v.                          :
                                     :
JERRY LEE RITCHEY, JR.,              :
         Defendant.                  :

## OPINION OF COURT

AND NOW, June __17__, 2014, the Court has for consideration the Statement of Matters

Complained of on Appeal filed on behalf of the Appellant, Jerry Lee Ritchey, Jr., pursuant to Pa.

R.A.P. 1925 (b) on June 3, 2014. The Appellant has appealed to the Superior Court of Pennsylvania

from this Court's Order of Sentence dated December 10, 2014. Appellant filed the Notice of

Appeal on January 8, 2014. Pursuant to Pa. R.A.P. 1925 (a), this Court shall state its reasons for

the Order in question.

This case involved multiple commercial burglaries. A six day jury trial was held in

November of 2013. On November 25, 2013, the Jury found Appellant guilty of: Count 1, Burglary,

in violation of 18 Pa. C.S.A. §3502 (a), a Felony of the second degree; Count 2, Theft by Unlawful

Taking, in violation of 18 Pa. C.S.A. §3921 (a) with a value of $200.00 or more, but not more than

$2000.00, a Misdemeanor of the first degree; Count 4, Burglary, in violation of 18 Pa. C.S.A.

§3502 (a), a Felony of the second degree; Count 5, Theft by Unlawful Taking, in violation of 18

Pa. C.S.A. §3921 (a), with a value of $200.00 or more, but not more than $2,000.00 a Misdemeanor

of the first degree; Count 7, Criminal Attempt to Commit Burglary, in violation of 18 Pa. C.S.A.

§901 (a) to commit 18 Pa. C.S.A. §3502 (a), a Felony of the second degree; Count 8, Criminal

Mischief, in violation of 18 Pa. C.S.A. §3304 (a)(5), in the amount of more than $1,000.00, a

1

Misdemeanor of the second degree; Count 9, Burglary, in violation of 18 Pa. C.S.A. §3502 (a), a Felony of the second degree; Count 10, Theft by Unlawful Taking, in violation of 18 Pa. C.S.A. §3921 (a), with a value of more than $2000.00, a Felony of the third degree; Count 11, Criminal Mischief, in violation of 18 Pa. C.S.A. §3304 (a)(5), in the amount of more than $1,000.00, a Misdemeanor of the second degree; Count 12, Burglary, in violation of 18 Pa. C.S.A. §3502 (a), a Felony 2; Count 13, Theft by Unlawful Taking, in violation of 18 Pa. C.S.A. §3921 (a), with a value of $200.00 or more, but not more than $2000.00, a Misdemeanor of the first degree; Count 15, Burglary, in violation of 18 Pa. C.S.A.§3502 (a), a Felony of the second degree; and Count 16, Theft by Unlawful Taking, in violation of 18 Pa. C.S.A. §3921 (a), with a value of $200.00 or more, but not more than $2000.00, a Misdemeanor of the first degree. The Court found the Defendant guilty of Count 3, Criminal Mischief, in violation of 18 Pa. C.S.A. §3304 (a)(5), a summary offense; Count 6, Criminal Mischief, in violation of 18 Pa. C.S.A. §3304 (a)(5), a summary offense, and Count 14, Criminal Mischief, in violation of 18 Pa. C.S.A. §3304 (a)(5), a summary offense.

On December 10, 2014, the Appellant was sentenced to an aggregate term of incarceration of 96 months to 192 months. The aggregate sentence imposed is to run consecutively to any and all sentences previously imposed upon this Appellant. The Court did not impose sentence in this case on Count 2, Count 3, Count 5, Count 6, Count 8, Count 10, Count 11, Count 13, Count 14, and Count 16, pursuant to the provisions of 18 Pa. C.S.A. §3502(d). As was stated in the Sentence Order of December 10, 2013, "[t]hose are all standard range sentences. The court imposes this sentence because of the current number of multiple felony convictions, because the Defendant's conduct was ongoing and caused injury to many victims, because the Defendant has shown no remorse and has taken no responsibility for his actions. This Judge sat as the Trial Judge in this

2

case and observed that the Commonwealth, through an extensive investigation and much legwork and hard work, put together a strong and compelling case against this Defendant. The Commonwealth established that the aqua shoe four arrow footprints led to one person and that person is the Defendant. Also, because we believe any lesser sentence would depreciate the seriousness of these crimes."

On January 8, 2014, this Court received Appellant's Notice of Appeal and on January 10, 2014, directed the Appellant to file a Concise Statement of Matters Complained of on Appeal. The Attorney who represented Appellant at trial resigned on January 6, 2014, and the Court granted her replacement an extension of time in which to file a final 1925 (b) statement to February 19, 2014. The replacement attorney also resigned and Appellant's current counsel requested and was granted an extension of time to file the 1925 (b) statement to May 15, 2014. On May 14, 2014, Appellant filed a 3rd Petition for Extension of Time in Which to File a Final 1925 (B) Statement of Matters Complained of on Appeal as he had not received any of the six days of trial transcripts and the Court granted Appellant an extension to file his 1925 (b) Statement by June 16, 2014. The Court received Appellant's Statement of Matters Complained of on Appeal on June 3, 2014. In his Statement, the Appellant sets forth six matters complained of from which the following is taken verbatim:

(a) The GPS warrant is invalid due to the lack of probable cause or reasonable suspicion to issue said warrant. The facts contained in the affidavit of the GPS warrant are general and devoid of specificity linking Mr. Ritchey to the instant burglaries, either directly or indirectly. As such, the affidavit lacks the particularity required to establish probable cause or reasonably[sic.] suspicion to issue the GPS warrant. The affidavit in question which was attached to the GPS search warrant is attached to this document as Exhibit A and is incorporated by reference as is specifically outline[sic.] hereto. Also attached is Exhibit B, which is incorporated by reference as if specifically outlined hereto. Exhibit B articulates the deficiencies of the affidavit in question. Furthermore, evidence collected as a result of the GPS warrant was subsequently used for the issuance of additional warrants to search and seize additional evidence from Mr. Ritchey's vehicles

3

and home. Said additional evidence was entered into evidence at trial and was used to convict Mr. Ritchey of the crimes listed in paragraph 2 above.

(b) The GPS warrant is invalid because the court that issued the GPS warrant did not have jurisdiction over the crimes to which Mr. Ritchey was ultimately convicted in this case. Furthermore, evidence collected as a result of the GPS warrant was subsequently used for the issuance of additional warrants to search and seize additional evidence from Mr. Ritchey's vehicles and home. Said additional evidence was entered into evidence at trial and was used to convict Mr. Ritchey or the crimes listed in paragraph 2 above;

(c) The GPS evidence, such as route travel and specific locations as determined by the GPS device, is so prejudicial that it outweighs any probative value and as such would prevent Mr. Ritchey from obtaining a fair trial;

(d) The Commonwealth failed to sustain its burden of proof at the time of trial and as such the verdict was against the sufficiency of the evidence. Given the totality of circumstances, the evidence presented at the time of trial was insufficient to sustain the guilty verdicts rendered by the jury in this case;

(e) The trial court admitted evidence into the record at trial about the defendant's prior convictions of four burglaries in Clearfield County, Pennsylvania pursuant to Rule 404 (b). The evidence of the prior convictions was allowed into evidence to prove common scheme, design, or plan and to establish identity. Furthermore the trial court concluded said evidence's probative value outweighs its potential for prejudice. The trial court's conclusion in allowing the prior convictions into evidence was in error.

(f) The sentence received by the defendant from the lower court in each of the counts listed in paragraph 2, although in the standard range, was too harsh for the conduct he was found guilty of committing.

Appellant's Statement of Matters Complained of on Appeal. This Court adequately addressed the issues (a), (b), (c), and (e) raised by the Appellant in its Opinion and Order of Court dated June 24, 2013.

However, in regards to issues (c) and (e) the Court additionally notes that the cautionary instructions anticipated to be given to the jury about the use of the GPS evidence and the evidence of prior convictions were in fact delivered to the jury. *See* Jury Trial Day One Tr. 76:11-77:11 (Nov. 15, 2013). Before the Attorneys presented their opening arguments, the Court included within the opening instructions to the jury the following cautionary instruction.

> Jurors, before we hear from the attorneys in their opening statements and before we hear any testimony or evidence, I want to give you what we call a "cautionary instruction." This is very important and I ask that you pay close attention.

4

You will hear evidence in this case tending to prove that the Defendant was found guilty of offenses for which he is not on trial in this case. I am speaking of the testimony and evidence to the effect that the Defendant was convicted of burglaries in Clearfield County, Pennsylvania and testimony and evidence regarding the specific conduct allegedly involved in those burglaries, which the Commonwealth alleges will demonstrate similarities between that alleged conduct in Clearfield County, Pennsylvania, and the conduct allegedly committed by the Defendant in this case. This evidence is before you for one limited purpose and that is for the purpose of allegedly tending to show a common scheme or plan and identity. This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt in this case.

*See* Jury Trial Day One Tr. 76:11-77:11 (Nov. 15, 2013). The Court repeated the cautionary instruction after one of Appellant's fellow inmates testified about conversations which occurred in jail. *See* Jury Trial Day Three Tr. 126: 15-127:13 (Nov. 19, 2013). The Court gave a third cautionary instruction when the District Attorney entered by stipulation that the Defendant was convicted on August 12th, 2012, of four counts of burglary in Clearfield County. *See* Jury Trial Day Four Tr. 122: 1-123:2 (Nov. 21, 2013). The Court also gave a cautionary instruction after Appellant testified on his own behalf and the Commonwealth introduced into the record certified copies of some additional prior criminal convictions of the Appellant. *See* Jury Trial Day Five Tr. 80:16- 83:8 (November 21, 2013).

In his Concise Statement of Matters Complained of on Appeal (d), Appellant alleges in an all-encompassing statement that the Commonwealth did not carry its burden of proof at trial and that the evidence presented was not sufficient to support the guilty verdict. Thus, the Court must review the evidence of record.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. *Commonwealth v. Karkaria,*

5

625 A. 2d 1167 (Pa. 1993). When reviewing a sufficiency claim, the Court is required to view the evidence in the light most favorable to the verdict winner. However, while reasonable inferences must be drawn in the Commonwealth's favor, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quantity as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt. *Commonwealth v. Robinson,* 817 A. 2d 1153, 1158 (Pa. Super. 2003). Furthermore, "[t]he Commonwealth may sustain its burden by proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines the credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." *Commonwealth v. Brown,* 701 A.2d 252, 254 (Pa. Super. 1997). "Where no single bit of evidence will by itself conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt." *Commonwealth v. Thomas,* 561 A.2d 699, 704 (Pa. 1989)(citations omitted).

In order to prevail on each burglary charge, the Commonwealth was required to prove beyond a reasonable doubt that Appellant entered a building that was not adapted for overnight accommodation at which time no person was present, with the contemporaneous intent of committing a crime, at a time when he was not licensed or privileged to enter. *See* 18 Pa. C.S. §3502 (a)(4). In order to prevail on the attempted burglary charge, the Commonwealth was required to prove beyond a reasonable doubt for the attempt that the Appellant had the intent to commit a specific crime and that he took a substantial step toward the commission of that crime and for the burglary that Appellant attempted to enter a building with the intent to commit a crime therein. *See* 18 Pa. C.S.A. § 3502(a) and 18 Pa. C.S.A. §901 (a). The Superior Court has stated, "[t]hus the Commonwealth must prove that the defendant had both the intent to enter the building and the intent to commit a crime therein in order to sustain its burden of proof of attempted burglary." *Commonwealth v. Willetts,* 419 A.2d 1280, 1281 (Pa. Super. 1980). In order to prevail on each theft by unlawful taking charge, the Commonwealth was required to prove beyond a reasonable doubt that Appellant unlawfully took or exercised "unlawful control over,

6

movable property of another with the intent to deprive him thereof." *See* 18 Pa, C.S.A. §3921. In order to prevail on each criminal mischief charge, the Commonwealth was required to prove beyond a reasonable doubt that Appellant intentionally damaged real or personal property of another. *See* 18 Pa. C.S.A. §3304(5). This Court has reviewed the evidence presented during the six day trial by the Commonwealth and finds it to be more than sufficient to sustain all sixteen of Appellant's convictions. As Defendant was only sentenced on the burglaries and attempted burglary the Court focuses only on those charges for the purposes of this appeal.

In her closing, Appellant's Attorney focused on the differences between the five burglaries and one attempted burglary. Jury Trial Day 6 Tr. 21: 13-43:25 (Nov, 25, 2013). She did not dispute that the burglaries, theft by unlawful taking, or criminal mischief occurred but rather argued that Appellant did not commit them. Jury Trial Day 6 Tr. 43:18-44:1 (Nov. 25, 2013). She concluded,

> I submit to you that his[Appellant's] testimony fell along the lines of all the testimony of the officers. He's not contradicting what was going on here. The only thing that he is contradicting is that he committed the burglaries. I submit to you that he did not commit the burglaries and he should be found not guilty of these crimes.

*Id.* Appellant, thus is challenging the sufficiency of the evidence linking him to the crimes.

The Commonwealth presented evidence that demonstrated that Appellant possessed tools which were substantially similar to those used in committing the burglaries and indeed Appellant admitted to owning the tools, but argued that he possessed them for legitimate purposes such as renovating a house he owned. *See* Jury Trial Day 5 Tr. 40:3-43:10 (Nov. 21, 2013). He kept many of the tools in a backpack in his bedroom not with the rest of his tools and not at the home which was being renovated. *Id.* A big crow bar was found in his vehicle. *Id.; See Commonwealth ex rel Miller v. Maroney*, 116 A.2d 755 (Pa. Super. 1955)("Possession of burglary tools would not in itself be sufficient for a verdict of guilty, but jury may consider all the circumstances of the case, in addition to the possession of the tools to determine guilt, providing other evidence was produced relating to burglary and stolen articles so that the jury could infer defendants had intent to use tools for a felonious

7

purpose."). The Commonwealth presented the testimony of one of Appellant's cellmates, Thomas Akroyd, who recounted that the Appellant had spoken to a great extent about the burglaries. *See* Jury Trial Day 3 Tr. 119: 15-18 (Nov. 19, 2013). Mr. Akroyd testified that,

A.  He[Appellant] did, he bragged that he was very smart, very intelligent; he claimed that he had an engineering degree. You know, when you're in jail you sort of get to talk to people and then you find out why they're in jail and he made it very clear that he was in jail for burglary. So he claimed he had an engineering degree. This didn't all come out at once, you know, this is over a period of two, three days, you know. But he claimed that he was very smart, he had and[sic.] engineering degree so therefore he had a vast knowledge of heating and air-conditioning systems, which really helped him with his knowledge of how to get into these places.

Q.  And um did he talk about picking a building?

A.  Ma'am, when he-----it was a little weird you know, when he spoke about this it was like a twinkle in his eye and you know, his face lit up when he talked about breaking into a building and how he would figure it out and he would just go from there.

Q.  So he approached it sort of mathematically?

A.  Yes, ma'am, yes ma'am. He wasn't happy until he had the conclusion. That's the way he described it to me.

Q.  Did he talk about the reasons why he did it?

A.  You know he didn't really talk about why he did it. You know he did mention a few occasions where he was not financially hurting to where he did need money and it was more or less just to prove that he could do it, you know, that's the way he described it to me.

Q.  Did he talk about um ---the counties where the break-ins occurred?

A.  Clearfield and Venango.

Q.  Clearfield and Venango?

A.  Yes Ma'am.

Jury Trial Day 3 Tr. 119:15-121:12 (Nov. 19, 2013). From this evidence, the jury was free to conclude that Appellant had admitted and even bragged about committing burglaries within Venango County. *See Commonwealth v. Staino*, 204 A.2d 664 (Pa. Super. 1964)("Testimony to the effect that defendants admitted to witness that they had participated in burglary would be sufficient to convict, irrespective of amount taken."). The jury was free to connect Mr. Akyrod's testimony about Appellant's knowledge of air-conditioning systems with the testimony of Mr. Greg Peiffer, manager of the 84 Lumber Company about how the 84 Lumber burglary was accomplished by removing the air conditioner from the office window and the burglar had gained access by crawling through the opening created. *See* Jury

8

Trial Day 2 Tr. 116:4-119:7 (Nov. 18, 2013). There was additional testimony that Appellant would have been able to fit through the opening created. Jury Trial Day 2 Tr. 134: 10-21 (Nov. 18, 2013).

There was also evidence presented showing that the Appellant bought one pair of aqua shoes with a four arrow shoe pattern from Walmart on May 21, 2011 and one pair of aqua shoes with the same pattern from Walmart on July 17, 2011. Jury Trial Day 3 Tr. 128:14-156:8 (Nov. 19, 2013) (Corporal Donald Cloak). Appellant admitted to purchasing the shoes and claimed they were for use in Florida and at Lake Erie. Jury Trial Day 5 Tr. 43:13-46:4 (Nov. 19, 2013). A mere two days after Appellant purchased the shoes, the four arrow patterned tracks were found at the scene of each of the three commercial burglaries committed on May 23-24 of 2011[1] and were also found at the scenes of the subsequent burglaries Appellant was convicted of in this case. The burglaries at Klapec Trucking and R&R Garage occurred the same night June 1st through June 2nd, 2011. 84 Lumber was entered through the hole created by removing the air conditioner and the non-slip dotted glove pattern and four arrow shoe pattern was found on a blueprint that was on the table next to the hole created by the air conditioner. It is unique and atypical to find water shoe tracks at these particular commercial businesses. Heavy machinery and equipment on the premises of these businesses make steel-toed shoes a much safer option than aqua shoes which are intended for swimming, kayaking, or other water sports. This aqua shoe pattern was present at the scenes of the instant burglaries and the burglaries Appellant was convicted of in Clearfield County. The aqua shoe pattern was not found at the scene of the attempted burglary of Whalen Contracting, but the attempt at Whalen Contracting occurred close in time and location to the burglaries which occurred the same night at Hards Welding and Thomas Auto which had the four arrow print design. *See Commonwealth v. Brosko*, 365 A.2d 867 (Pa. Super. 1976) ("Burglary conviction was supported

---

[1] Thomas Auto and Hards Welding were broken into in the evening hours of May 23-24, 2011 and the attempted burglary at Whalen's Contracting occurred during that same time.

9

by evidence that defendant was found in possession of property burglarized from service station only several hours previously, and that modus operandi of burglary at such station matched that employed by defendant in burglarizing second service station,") and *Commonwealth v. Burton*, 770 A.2d 771 (Pa. Super. 2001), appeal denied, 868 A.2d 1197 (Pa. 2002)("Conviction for attempted burglary was supported by evidence that someone had entered home by pushing in window screen, that shoe impression on seat of chair under window matched shoes defendant was wearing at time of his arrest, and that defendant had burglarized two nearby residences on same evening."). The Commonwealth introduced evidence that at every burglary scene there were a pair of non-slip rubber dot gloves being worn. The burglaries were conducted after the businesses were closed between 11 p.m. and 4 a.m. when few cars are on the road. Each business had filing cabinet and desk drawers opened and papers scattered around the office. Money was primarily what was taken from the different businesses, with the exception of the security system taken from Klapec Trucking. The jury heard testimony from Trooper Rodinbaugh detailing the Appellant's movements through the GPS tracker placed on the Mazda the night of the Clearfield County burglaries which placed him in the vicinity of those burglaries. Jury Trial Day 4 Tr. 87:20- 101:6 (Nov. 21, 2013). At all of the businesses burglarized any security systems were disabled, cable and phone lines were cut at each of the businesses. The jury heard testimony from Trooper David Brown that on the night of the 84 Lumber burglary, the LSAG North American Plate Reader System on Route 257 between Oil City and 84 Lumber recorded Appellant's Mazda's license plate passing the camera at 3:10 a.m. Jury Trial Day 4 Tr. 105:23-109:16 (Nov. 21, 2013). From this evidence the jury was free to believe that based on the similarities in the details of the burglaries, "proof that a person committed one of them makes it very unlikely that anyone else committed the others." *See Commonwealth v. Ross*, 57 A.3d 85, 105 (Pa. Super. 2012).

10

The jury also heard evidence that after Corporal Cloak approached Appellant at the Sheetz in Clarion on June 15, 2011 and inquired about the tires that were on Appellant's Toyota Camry as they matched tire tracks at a burglary scene, Appellant went to Walmart and had his tires changed within two hours of the conversation with Corporal Cloak. Jury Trial Day 3 Tr, 128:14-156:8 (Nov. 19 2013) (Corporal Donald Cloak). The jury also heard testimony that when Appellant was arraigned in Clearfield County for burglary he asked to speak to Corporal Cloak and Trooper Ray and had the following conversation with them.

> A. At that point he[Appellant] related a hypothetical to us. If a person was to commit these eighty to a hundred crimes that you guys say, and points to us, would it be better for that person to get it out in the open at this time? And we reassured him, yes it would.

*Id.* at 143: 24-27. Additionally, the jury heard testimony that the surveillance system that was stolen from Klapec's Trucking was discovered in Appellant's bedroom. Jury Trial Day 1 Tr. 99: 20-112:4 (Nov. 15, 2013)(Trooper Mark Swartfager). Appellant claimed that he had bought the security system outside of his mother's bait shop from a guy who he didn't remember in a white van for a big discount. Jury Trial Day 5 Tr. 53: 20- 55:9 (Nov. 21, 2013). *See Commonwealth v. Weaver,* 280 A.2d 585 (Pa. Super. 1971)("Possession of stolen clock by witness, who had received it as a Christmas gift from the accused charged with burglary within minutes after burglary was circumstantial evidence from which a jury could draw inference of accused's guilt in view of the unreasonable explanation of its possession by accused") and *Commonwealth v. Fisher,* 372 A.2d 1 (Pa. Super. 1977)("Evidence, in prosecution of defendant for burglary and criminal conspiracy, including evidence that grandfather clock resembling stolen grandfather clock was found in defendant's apartment, was sufficient to support conviction."). The jury heard testimony that Appellant was near Hards Welding and in 84 Lumber earlier in the day before the burglaries took place. *See Commonwealth v. Balch,* 476 A.2d 458 (Pa. Super. 1984)("Evidence that defendants

11

were seen in vicinity of burglarized home on the day on which burglary occurred and that stolen items were later found in automobile in which defendants were riding was sufficient to sustain defendants' convictions for burglary and criminal conspiracy."). The jury heard undisputed testimony from each of the victims as to the amount of damages that they suffered. After a careful review of the record, the Court rejects Appellant's challenge to the sufficiency of the evidence to support his convictions as meritless.

Appellant's last contention is that his sentence is too harsh for the conduct he was found guilty of committing, although he admits he received a standard range sentence. It is noted at the outset that "sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa.Super.2005). "A challenge to an alleged excessive sentence is a challenge to the discretionary aspects of a sentence." *Commonwealth v. Pennington*, 751 A.2d 212, 215 (Pa. Super. 2000). "Challenges to the discretionary aspects of sentencing do not entitle an Appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Before an Appellant is entitled to review of the discretionary aspects of his sentence, he must satisfy a four-part test:

> [W]e conduct a four-part analysis to determine (1) whether appellant has filed a timely notice of appeal, *see* Pa. R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa. R. Crim. P. [720]; (3) whether appellant's brief has a fatal defect, Pa. R.A.P. 2119 (f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa. C.S.A. §9781 (b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 909 A.2d 303 (Pa. 2006)(internal citations omitted). A substantial question occurs,

> only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, (Pa. Super. 2000). Generally, "[a]n allegation that the sentencing court failed to consider certain mitigating

12

factors generally does not necessarily raise a substantial question. *Commonwealth v. McNabb*, 819 A.2d 54, 57 (Pa. Super. 2003). *Accord Commonwealth v. Wellor*, 731 A.2d 152, 155 (Pa. Super. 1999)(reiterating allegation that sentencing court "failed to consider" or "did not adequately consider" certain factors generally does not raise a substantial question).

*Commonwealth v. Moury*, 992 A.2d at 171.

The Superior Court of Pennsylvania has stated that in exercising its discretion at sentencing, "the trial court must consider the character of the defendant and the particular circumstances of the offense..., and must impose a sentence that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." *Commonweath v. Guth*, 735 A.2d 709, 711 (Pa. Super. 1999). More specifically, "the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. denied*, 545 U.S. 1148 (2005). When the "sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court 'was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors,'" *Commonwealth v. Moury*, 992 A.2d at 171 (citations omitted). Additionally, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Moury*, 992 A.2d at 171. Moreover, "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and length of imprisonment." *Commonwealth v. Pass*, 914 A.2d 442, 446-447 (Pa. Super. 2006). A "claim of excessiveness may raise a substantial question where an appellant provides a plausible argument that the sentence is contrary

13

to the Sentencing Code or the fundamental norms underlying the sentencing process." *Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002).

The Court notes that the sentences Appellant received are within the standard range of the sentencing guidelines. Burglary, where the building is not a home and no persons were present receives an offense gravity score of 5, 203 Pa. Code §303.15. Appellant had a prior record score of 3. Appellant was convicted of five separate counts of Burglary and one count of attempted Burglary and received a sentence of sixteen (16) months to thirty-two (32) months on the each count to run consecutive to one another. The standard minimum sentencing guideline range for this offense is 6 months to 16 months. Appellant's minimum sentence for each count of Burglary was the highest possible standard range minimum sentence. The statutory limit for a minimum sentence for Burglary is sixty months.

In the instant matter, immediately before sentencing the Appellant, this Court stated on the record the factors that were considered in imposing the sentence. Specifically, this Court stated:

> In imposing sentence in this case, we have considered the Defendant's age, his education, the condition of his health, medical history, including mental health, family history, employment history and all the other information contained in the pre-sentence investigation report. We have considered the Defendant's statement made to the court at sentencing, the report from the Venango County Prison, in the form of the Venango County Prison Inmate Evaluation Report. We have considered the remarks of defense counsel at the sentencing hearing and the recommendation made by the Commonwealth at the sentencing hearing. We have considered the circumstances surrounding all of these offenses; this Judge sat as the Trial Judge in this case. The court has considered the sentencing guidelines and all other relevant factors.

*Sentence Hr'g Tr.* 25:18–26:12 (December 10, 2013). Furthermore in the December 10, 2013, Order of Sentence, this Court stated, "[t]hese are all standard range sentences. The court imposes this sentence because of the current number of multiple felony convictions, because the

14

Defendant's conduct was ongoing and caused injury to many victims, because the Defendant has shown no remorse and has taken no responsibility for his actions. This Judge sat as the Trial Judge in this case and observed that the Commonwealth, through an extensive investigation and much legwork and hard work, put together a strong and compelling case against this Defendant. The Commonwealth established that the aqua shoe four arrow footprints led to one person and that person is the Defendant. Also, because we believe any lesser sentence would depreciate the seriousness of these crimes."

At sentencing Appellant's counsel and Appellant sought concurrent sentences for the counts stating that they should be considered a crime spree. *Sentence Hr'g Tr.* 22:11–15 (December 10, 2013). It is well settled that "in imposing sentence, a trial judge is given the discretion to determine whether, given the facts of a particular case, a given sentence should be consecutive to, or concurrent with, other sentences being imposed." *Commonwealth v. Rickabaugh,* 706 A.2d 826, 847 (Pa. Super. 1997). Appellant is not entitled to a "volume discount" for committing multiple burglaries. Appellant burglarized or attempted to burglarize six separate businesses which each suffered individualized damage and loss. This is not Appellant's first "crime spree," his PSI contained prior theft by unlawful taking convictions and burglary convictions. Consecutive sentences do not "present a substantial question regarding the discretionary aspects of the sentence." *Com. v. Hoag,* 665 A.2d 1212, 1214 (Pa. Super. 1995).

The allegation that the sentence received by the Appellant, although in the standard range, was too harsh for the conduct he was found guilty of committing, absent more, does not raise a substantial question. *Moury,* 992 A.2d at 175. Based on the foregoing, the sentence imposed by the Court is supported by sufficient explanation, is not unreasonable or unduly lengthy, and is

15

consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the Appellant.

Based on the foregoing, the Appellant's issues raised as matters complained of on appeal are deemed without merit.

BY THE COURT,

_____
OLIVER J. LOBAUGH, President Judge

cc:    DA
       Jeffrey Misko, Esq.

16